# In the United States Court of Federal Claims

No. 19-1329C

(Filed Under Seal: December 17, 2019)
(Reissued for Publication: January 3, 2020)[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| G4S SECURE SOLUTIONS (USA), INC., | |
| Plaintiff, | Post-Award Bid Protest; Rational Basis Standard; Motion for Judgment on the Administrative Record; Disagreements With Agency's Proposal Evaluations; Agency Discretion; Motion for Permanent Injunction; 18 U.S.C. § 1491(b); Blanket Purchase Agreement; Incumbent Contractor; Prejudice; Unstated Evaluation Criteria; FAR § 8.4 Procurement. |
| v. | |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| ISS ACTION, INC., | |
| Defendant-Intervenor. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Gerald H. Werfel*, with whom was *H. Todd Whay*, Baker, Cronogue, Tolle & Werfel, LLP, McLean, Virginia, for Plaintiff G4S Secure Solutions (USA), Inc.

*Lauren S. Moore*, Trial Attorney, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Tara K. Hogan*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., and *Terrius D. Greene*, Attorney (Trade & Finance), Office of Chief Counsel, United States Customs and Border Protection, for Defendant.

---

[1] The Court issued this decision under seal on December 17, 2019, and invited the parties to submit proposed redactions of any proprietary, confidential, or other protected information on or before December 27, 2019.  The parties submitted two categories of proposed redactions which the Court finds acceptable.  First, the Court replaced references to pricing information with [$\*\*\*].  Second, the Court replaced the identity of ISS's proposed subcontractor with [\*\*\*].  The Court has also changed a clerical error on page 10.

*Daniel R. Forman*, with whom was *Robert J. Sneckenberg*, Crowell & Moring LLP, Washington, D.C., for Intervenor ISS Action, Inc.

OPINION AND ORDER

WHEELER, Judge.

This post-award bid protest arises from a competitive procurement conducted by the U.S. Department of Homeland Security's Customs and Border Protection ("CBP") for security and transportation services to assist the U.S. Border Patrol along the southwest border of the United States. AR 1. As grounds for its protest, Plaintiff G4S Secure Solutions (USA), Inc. ("G4S"), the incumbent contractor, challenges CBP's evaluation of proposals and its decision to select intervenor ISS Action, Inc. ("ISS") for award. G4S argues that CBP's evaluation of proposals was arbitrary, irrational, and unfair.

Currently before the Court are the parties' cross-Motions for Judgment on the Administrative Record, filed pursuant to Rule 52.1 of the Court. For the reasons explained below, the Court finds that the awardee ISS properly received the highest possible non-price ratings and was more than $100 million less expensive than G4S's proposal. Accordingly, the Court DENIES G4S's protest and its accompanying request for a permanent injunction. The Court GRANTS the Government's dispositive motion for Judgment on the Administrative Record.

Background

I.   The Solicitation

CBP issued Solicitation No. 03C19Q0067 for a Blanket Purchase Agreement ("BPA") on June 25, 2019. The solicitation is for security and transportation services on the southwest border of the United States. AR 1. CBP issued the solicitation as a Federal Supply Schedule order under Federal Acquisition Regulation ("FAR") 8.405-2(b)(2) to six contractors holding a General Service Administration ("GSA") Schedule 84 contract. See AR 2; Dkt. No. 28 at 2. The Request for Quotes ("RFQ") included a Performance Work Statement ("PWS"), Transportation Plan, Corporate Experience Questionnaire ("CEQ") form, Pricing Worksheet, Sample Task Order, Quality Assurance Surveillance plan, Evaluation Instructions, and a template for a BPA. AR 1–95. The BPA consisted of a one-year base period with four one-year option periods. AR 11.

The solicitation included three evaluation factors: Experience and Risk Awareness/Mitigation, Oral Presentation, and Pricing Spreadsheet and Sample Task Order Submission. AR 2–11. After the offerors submitted proposals, Phase One of the solicitation called for CBP to narrow the field to up to three contractors deemed most highly qualified based on the evaluation of their proposals. AR 3. Phase Two provided that CBP

2

would receive oral presentations and conduct a price analysis. AR 5–11, 271–73. CBP would then award the contract to the offeror considered to be the "best value" proposal. AR 9.

The agency evaluated the proposals using an adjectival assessment rating of "High Confidence," "Some Confidence," or "Low Confidence." AR 10. The "Technical (Non-Price)" factor of the proposals included two phases. Id. The first phase was a thirty-minute telephone interview focusing on the offeror's CEQ. AR 2. The CEQ required offerors to identify three prior contracts relevant to the work sought in the RFQ. AR 96, 99. G4S's CEQ identified three of its own prior contracts while ISS identified two of its own contracts and one performed by its proposed subcontractor, [***]. AR 96–98, 99–107. In Phase One, CBP's Technical Evaluation Team ("TET") concluded that they had "high confidence" that both G4S and ISS "would be able to successfully compete for this contract." AR 127, 132. As a result, CBP invited only G4S and ISS to participate in Phase Two. AR 322.

During Phase Two, offerors completed an in-person oral presentation and submitted a pricing worksheet and a sample task order. AR 2, 5. The TET evaluators focused on the offerors' technical/management approach submitted during the oral presentation. AR 10. The Technical/Management approach refers to "the vendor's technical solution, approach, capabilities, labor-mix/level-of-effort, and general understanding of the requirements [of the solicitation]." Id. In Phase Two, CBP found G4S's oral presentation substandard, stating that the contractor's answers were deficient and "not completely appropriate according to the requirements of the PWS," and noted the presenters' heavy reliance on pre-prepared notes. AR 287.

The agency also conducted a separate price analysis in accordance with FAR 8.405-3(b)(2)(vi) to understand the reasonableness and fairness of the offeror's proposed price. Id. In assessing price, CBP evaluated the offers for price risk and affordability. Id. The solicitation explained how CBP would weigh each factor against the others: "All 'Non-Price/Cost' factors when combined, are significantly more important than Cost/Price." AR 9. While assessing pricing, CBP determined that both G4S and ISS's pricing were low performance risks to the Government. AR 288. ISS, however, "offer[ed] [$***]" and demonstrated a "[s]olid understanding" of potential challenges. AR at 274; see also AR 167, 279.

Based on the above ratings, CBP concluded that although G4S was the incumbent contractor, "[its] proposal does not offer the best value." AR 288. Consequently, CBP selected ISS, the only remaining offeror, because its "overall technical approach and expected performance level is higher . . . and costs much less than the incumbent." Id.

3

## II.     The Present Dispute

G4S challenges the validity of the agency's evaluation of its proposal and best value determination. G4S criticizes CBP for failing to consider the "unacceptable risk" posed by ISS's lack of technical understanding. G4S further alleges that the agency provided conflicting instructions and applied unequal treatment during Phase Two. According to G4S, CBP's price reasonableness analysis did not comply with the RFQ's terms. G4S adds that CBP provided inadequate documentation of its decision-making process, "depriv[ing] this Court of the ability to determine the reasonableness of the agency's procurement decisions." Dkt. No. 33 at 20. Finally, G4S asserts that CBP improperly relied on a "clearly defective" independent Government cost estimate ("IGCE") which did not include the cost of surge support or work estimates for two of the sectors included in the RFQ, Big Bend and El Centro.

On August 30, 2019, G4S filed its complaint in this Court. ISS intervened on September 24, 2019. Dkt. No. 23; see also Dkt. No. 19. Briefing concluded on December 2, 2019. The Court heard closing arguments from counsel on December 6, 2019.

## Discussion

## I.     Standard of Review

The Tucker Act grants this Court subject-matter jurisdiction over bid protests. 28 U.S.C. § 1491(b)(1). In a bid protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706. The APA provides that "a reviewing court shall set aside the agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

An agency's decision does not violate the APA if the agency "provided a coherent and reasonable explanation of its exercise of discretion." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001). Further, an agency must articulate a "rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citation omitted). The Court's review is "highly deferential" to the agency as long as the agency has rationally explained its award decision. Bannum, Inc. v. United States, 91 Fed. Cl. 160, 169–70 (2009).

Even if the agency acted without a rational basis, the Court cannot grant relief unless the agency's action prejudiced the protestor. See Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The erroneous agency action prejudices a protestor if, but for the agency's error, there was a "substantial chance" that the agency would have awarded

4

the contract to the protestor. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); see also Bannum, 404 F.3d at 1353.

## II. CBP's Evaluation of G4S's Proposal Was Not Arbitrary or Irrational.

G4S claims that CBP's evaluation of its proposal was arbitrary, irrational, and unfair. G4S gives three reasons for this position. First, it says that CBP failed to perform a proper cross-walk analysis of G4S and ISS's proposals at Phase One of the solicitation. Second, it claims that CBP improperly considered the experience of ISS's proposed subcontractor when determining whether ISS would be able to perform the contract. Finally, it says that CBP unreasonably evaluated its oral presentation at Phase Two. None of these arguments is persuasive.

### A. Cross-Walk Analysis

G4S first objects to CBP's "high confidence" designation for ISS in Phase One and alleges that the agency did not complete the RFQ's required "cross-walk" analysis. As a result, G4S believes CBP "failed to meaningfully consider or analyze ISS's lack of relevant experience, and its extreme reliance upon [***]." Dkt. No. 27 at 34. The solicitation explains that "[t]he Government will perform a cross-walk of the technical presentation and pricing submissions to ensure the price approach is in line with the technical approach." AR 9–10. "This cross-walk will affirm the vendor's price is fair and reasonable with respect to the vendor's technical approach (*i.e.*, level-of-effort/labor mix)." Id.; see also Harmonia Holdings Group, LLC v. United States, 132 Fed. Cl. 129, 138 n.6 (2017).

CBP defends its evaluation, contending that its award decision was not improper because the agency's Source Selection Evaluation Board ("SSEB") conducted the required cross-walk analysis and determined that both contractors' pricing was fair and reasonable. See Dkt. No. 34 at 13; AR 285, 288. In the agency's evaluation of G4S and ISS's proposals, the Source Selection Authority ("SSA") refers to the cross-walk analysis explicitly stating: "When looking across-the-board for price risk and affordability (*the Government's level of confidence in the Offeror's ability to perform the work as proposed based on the price information provided* . . . I conclude that both ISS Action and G4S'[s] price risk is low, and that all of their proposed rates and prices are fair and reasonable." AR 288 (emphasis in the original); see also AR 285 (explaining that the SSEB evaluated the offers which included conducting "a cross-walk of the price with respect to the vendor's technical approach"); AR 287.

#### 1. CBP's Analysis Was Reasonable and Adequate.

CBP conducted this procurement pursuant to FAR 8.4. AR 10. Under FAR 8.405-2(f), the agency must document "[t]he rationale for any tradeoffs in making the selection." The amount of documentation required in a FAR 8.4 streamlined procurement is far less than that required by FAR 15. See Matt Martin Real Estate Mgmt. LLC v. United States,

96 Fed. Cl. 106, 116 (2010); WorldTravelService v. United States, 49 Fed. Cl. 431, 441 (2001). "The very purpose of FAR Part 8 is to provide a more simplified and flexible approach away from the more formal and rigorous procedures for negotiated procurements." Allied Tech. Grp. Inc. v. United States, 94 Fed. Cl. 16, 50 (2010) (internal quotation omitted).

G4S argues that the agency failed to conduct the required cross-walk analysis which caused the agency to overlook the "significant risk" posed by ISS's inadequate number of [***]. Dkt. No. 33 at 5–6. G4S asserts that the inadequate documentation provided by the CBP implies the cross-walk was limited to a price reasonableness analysis instead of the full scope of the cross-walk required by the Solicitation. Dkt. No. 33 at 19.

G4S's position regarding CBP's failure to engage in a cross-walk analysis essentially conflates a price realism analysis with a cross-walk analysis, which is a lower standard. "For a price realism analysis to apply in a fixed-price contract, the solicitation must expressly or implicitly require a price realism analysis for a proposal to be rejected for an unrealistically low price." NVE, Inc. v. United States, 121 Fed. Cl. 169, 180 (2015); see also Ceres Envtl. Servs., Inc. v. United States, 97 Fed. Cl. 277, 306 (2011). In the present solicitation, there was no explicit price realism requirement obligating the agency to independently review and evaluate each individual aspect of the price. Rather, when evaluating the proposals, CBP need only focus on the "fairness and reasonableness" of the overall offer; any risk of loss from a low price was on the contractor. AR 9–11. CBP did just that: it "evaluated the vendors' Pricing Worksheets and Sample Task Orders for price reasonableness, inclusive of a cross-walk of the price with respect to the vendor's technical approach." AR 285.

G4S further alleges that the errors made throughout the solicitation process, such as failing to adequately document its cross-walk analysis, led to "unreasonable and unsupported conclusions." Dkt. No. 33 at 18–19. However, the solicitation did not require a written cross-walk analysis. See AR 9–10. CBP engaged in a tradeoff and best-value analysis, which explicitly considered the cross-walk analysis conducted by the SSEB. AR 270–88. The administrative record supports CBP's assessment that G4S's proposal did not offer the best value. The agency fully explored the benefits of G4S's "inherent advantage with the knowledge of day-to-day operations" relative to the benefits of ISS's "innovative" approaches. AR 284–88. In support of its technical and price evaluations, the agency memorialized its findings with written Consensus Evaluation Reports, Price Analysis Reports, and an analysis of its best value determination. See AR 125–29, 130–34, 172–80, 254–65, 266–67 (Consensus Evaluation Report); AR 269–79 (Price Analysis Report); AR 87–88 (best value analysis). Accordingly, CBP's documentation regarding its cross-walk analysis was appropriate and in accordance with the solicitation's requirements.

6

### 2. G4S Submitted a Comparably Inferior Proposal.

G4S appears surprised that the agency ultimately selected ISS, since G4S was the incumbent contractor. The Court does not share this same surprise. The solicitation explains that "[w]here quotes are determined to be substantially equal in technical merit, price will . . . become the predominating factor." AR 9.

G4S's proposal was approximately $100 million more than ISS's proposal. AR 141, 182 (compare $346,071,109 for G4S's total proposed cost for labor and vehicles, versus $248,828,930 for ISS's total proposed cost for labor and vehicles); id. at 274, 279 (noting that "ISS Action['s] proposed [[***]] rates over the lifespan of the BPA are much lower than G4S'[s] proposed rates"). ISS also provided more detailed responses to challenge questions while G4S failed to completely respond to several challenge questions. AR 181 ("G4S did not answer all parts of the question . . . [and] failed to answer how they would respond in an emergency.").

Moreover, G4S's argument that ISS's proposal suffered from technical defects is unavailing. While the solicitation does not include a mandatory number of [***], G4S believes that at a minimum [***]—its proposed amount—are necessary to perform the contract. Dkt. No. 27 at 27. To support its contention, G4S explains that as the incumbent it has "knowledge of the effort required to perform the work" which ISS could not possess. Id. at 28. According to G4S, had the agency performed a proper cross-walk, "CBP would have realized the ISS solution [of [***]] was alarmingly understaffed for [***] and represented a significant risk to the successful transition and overall performance of the BPA." Dkt. No. 33 at 8–9.

CBP and ISS counter that the [***] quoted for ISS represented an amount needed to staff every sector. They add that the solicitation did not require the agency to scrutinize the staffing by sector. Notably, the [***] difference in the contractors' proposed staffing is G4S's proposal of [***] and ISS's [***]; [***] included [***]. AR 271, 274–75. The evaluators focused on the reasonableness of the rates and total employees available. AR 285.

Contrary to G4S's assertion, the agency explicitly recognized the variances in proposed staffing. See AR 271, 274, 286. Despite the discrepancies, CBP assigned ISS's proposal a High Confidence rating in part because of ISS's proactive approach to potential staffing obstacles and [***]. AR 284–85. Ultimately, any changes to the [***] difference in G4S's and ISS's total proposed staffing would not negate the more than $100 million price difference between the contractors' proposals.

### B.   Past Performance

G4S argues that CBP's consideration of ISS's proposed subcontractor's experience caused the agency to overlook ISS's "complete lack of relevant experience and irrationally

conclude with high confidence that ISS could successfully perform the work." Dkt. No. 33 at 16. In essence, G4S claims that ISS failed to meet certain minimum requirements and should have been ineligible to advance to Phase Two. The RFQ, however, includes no such minimum requirements and states that "[t]he Government will assess the *collective* experience in each vendor's submittal." AR 96, 99 (emphasis added).

As with other technical factors, "[e]valuation of past performance is 'within the discretion of the contracting agency and will not be disturbed unless it is unreasonable or inconsistent with the terms of the solicitation or applicable statutes or regulations.'" Fort Carson Support Servs. v. United States, 71 Fed. Cl. 571, 599 (2006) (quoting Consolidated Eng'g Servs. v. United States, 64 Fed. Cl. 617, 637 (2005)); see also Westech Int'l v. United States, 79 Fed. Cl. 272, 293 (2007).

Contrary to G4S's position, the RFQ did not limit consideration of past performance to the prime contractor. Instead, the RFQ permitted one prior contract to be that of a teaming partner. AR 3. In its Corporate Experience Questionnaire, ISS included two of its contracts and one contract performed by its teaming partner, [***], with the [***]. AR 99–107. ISS's two contracts, like the BPA, involved armed guard and security services. AR 97–98. Moreover, those combined experiences were similar in size and scope to both G4S's contracts and the RFQ at issue. AR 96–107. For example, G4S's largest contract included [***] armed officers[2] while [***] contract employed [***] full-time employees. AR 97, 105. [***] contract was also [$***] which is comparable to CBP's estimate of $291,500,499 for this procurement. AR 21, 107.

The record, therefore, supports CBP's decision that ISS's "collective experience" was sufficient to warrant a High Confidence rating. AR 3, 99–100. The Court will not overturn CBP's determination merely because G4S disagrees with the analysis. Based on ISS's and [***] collective experience there is no reason to conclude that ISS lacks the resources or experience to meet the solicitation's requirements.

      C.      Oral Presentation

G4S next argues that CBP acted arbitrarily when it evaluated G4S's oral presentation. G4S asserts that the agency irrationally focused on presentation skills instead of its ability to perform the work required by the solicitation. See Dkt. No. 27 at 36–38; Dkt. No. 33 at 11–13. Specifically, G4S points to (1) the evaluators' "fail[ure] to clarify the issues they had with G4S responses . . . [while] repeatedly interact[ing] with ISS during its [question and answer] session to clarify answers," and (2) CBP's use of undisclosed criteria in evaluating G4S's presentation. Dkt. No. 27 at 26–32. G4S cites FAR 1.602-2(b), which requires contracting officers to "[e]nsure that contractors receive impartial, fair, and equitable treatment." Dkt. No. 27 at 31; see also FAS Support Servs., LLC v.

---

[2] G4S did not specify whether the armed officers were full-time personnel.

United States, 93 Fed. Cl. 687, 694 (2010).  Effectively, G4S alleges that CBP was attempting to direct the award to ISS.  See Dkt. No. 27 at 31.

### 1. CBP Did Not Favor One Offeror Over the Other.

G4S complains that CBP "failed to clarify the issues they had with the G4S presentation but did so with ISS." Dkt. No. 33 at 11.  As evidence of bias, G4S states that an examination of the disparity in length of its and ISS's challenge question session is instructive.  G4S's challenge session lasted seven minutes and forty-six seconds while ISS's session lasted sixty minutes.  See AR 169–171 (transcript of G4S challenge session), 235–53 (transcript of ISS challenge session); Dkt. No. 27 at 31.  But the solicitation did not require the agency to ask additional questions.  AR 7–8.  Nor were questions intended to cure deficiencies or material omissions.  See Mission1st Grp., Inc. v. United States, 144 Fed. Cl. 200, 216 (2019).  Rather, the evaluators tailored their questions based on the substance of the respective presentations.  AR 7.  In fact, the evaluators also asked G4S clarifying questions, three of which were identical to those asked to ISS.[3]  See AR 168–71, 235–53.

To further support its argument, G4S asserts that ISS "grossly exceeded" the solicitation's 30-minute time limit which gave it an unfair advantage.  Dkt. No. 27 at 31.  According to CBP, however, 60 minutes was consistent with the solicitation's terms.  Dkt. No. 28 at 13, 24 (citing AR 4).  Even if G4S is correct, prior to the presentations CBP informed both contractors that they had 60 minutes for the challenge session.  AR 168, 235; see also Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1381 (Fed. Cir. 2009) (finding no prejudice where the agency deviated from the solicitation's terms and permitted all offerors to submit proposals by e-mail, a prohibited means of transmission under the original terms).

G4S fails to provide facts sufficient to overcome the presumption of good faith afforded to an agency.  See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002); Avtel Servs., Inc. v. United States, 70 Fed. Cl. 173, 189 (2006); ITT Fed. Servs. Corp. v. United States, 45 Fed. Cl. 174, 188 (1999).  The onus was not on CBP to correct any deficiencies in G4S's presentation.  Therefore, CBP's decision to ask G4S five challenge questions and ISS seven challenge questions was reasonable and in accordance with the terms of the solicitation.  AR 8, 169–72, 235–53.

---

[3] CBP asked both G4S and ISS: (1) "What is the process if a fight breaks out among detainees and illegal contraband was utilized" (AR Tab 13 at 169; AR Tab 18 at 236); (2) "How would the [sector manager/captain ensure] timely communications with the [task order manager] for emergencies and for [a] lack of personnel" (AR Tab 13 at 170; AR Tab 18 at 237); and (3) "[H]ow would you respond to losing a sector manager" (AR Tab 13 at 170; AR Tab 18 at 242).

2. CBP Properly Assessed Weakness in G4S's Presentation.

G4S also argues that "the Government improperly evaluated G4S's use of notes during its oral presentations as an unstated evaluation factor . . . [t]he solicitation did not preclude, limit, or caution offerors from utilizing notes during the oral presentation, and Contracting Officer Saad specifically authorized the use of notes." Dkt. No. 27 at 30; see also AR 986 (correspondence between G4S and Contracting Officer Saad permitting the use of notes).

The record, however, supports the evaluators' concerns that G4S lacked proper understanding of the solicitation's requirements in part due to its "heavy reliance" on notes. The evaluators explained that ISS's responses to challenge questions "were full, detailed, and clear, while challenge question responses from G4S were partially answered and not completely appropriate according to the requirements of the PWS." AR 287–88; see also AR 266 (noting that ISS used "very few notes"). G4S nevertheless complains that it "was harmed by this absurd outcome because [its use of notes] formed part of the basis for assigning G4S a Some Confidence rating under Factor 2, as well as assigning ISS a High Confidence rating for that factor." Dkt. No. 33 at 11.

Although the agency permitted the use of notes during the oral presentation, it is not the case that G4S's presentation skills prevented it from receiving the award. Given the $100 million difference between G4S's and ISS's proposed prices, G4S cannot reasonably show that it would have received the award even in the absence of CBP's alleged errors. See Labatt Food Serv., Inc., 577 F.3d at 1380; Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1357 (Fed. Cir. 2004). After all, the solicitation provided all bidders with notice that price would be the determining factor when technical merit was "substantially equal." AR 9; see also Electronic Data Systems, LLC v. United States, 93 Fed. Cl. 416, 436 (Fed. Cl. 2010) (finding "a significant difference in price . . . can and often does preclude such a [prejudice] finding"); Axiom Res. Mgmt., Inc. v. United States, 78 Fed. Cl. 576, 590 (2017). Therefore, based on ISS's more detailed presentation and lower-priced offer, CBP's decision to award ISS the procurement was not arbitrary or capricious.

III. Permanent Injunction

Under its bid protest jurisdiction, the Court has the power to issue injunction relief pursuant to 28 U.S.C. § 1491(b). See PGBA, LLC v. United States, 389 F.3d 1219, 1223 (Fed. Cir. 2004) ("We give deference to the Court of Federal Claims' decision to grant or deny injunctive relief, only disturbing the court's decision if it abused its discretion."). In deciding whether to grant a permanent injunction, a court considers (1) whether the plaintiff has succeeded on the merits; (2) whether the plaintiff will suffer irreparable harm without an injunction; (3) whether the balance of the hardships favors an injunction; and (4) whether an injunction is in the public interest. Id. at 1228–29 (citation omitted).

10

Because G4S has not succeeded on the merits of its complaint, the Court finds no legally compelling reason to issue an injunction.

## Conclusion

Based upon the foregoing, the Court DENIES G4S's motion for judgment on the administrative record and DENIES G4S's motion to permanently enjoin CBP from proceeding with the solicitation for transportation and security guard services along the southwest border of the United States. The Court GRANTS the Government's motion for judgment on the administrative record. The Clerk of the Court is directed to enter judgment for the United States. No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge